Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, June 03, 2011 11:32:12 AM

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                )
                                      )
ROBIN MASON,                          )    Case No. 10-2092
                                      )
            Debtor.                   )    Chapter 13

## MEMORANDUM OPINION

In the Chapter 13 plan proposed by Robin Mason (the "Debtor"), she created a special class for student loan claims. There are $24,370.67 in student loan claims, and the Debtor proposes to make a 72% distribution on these claims.[1] In comparison, general unsecured creditors, whose allowed unsecured claims total $25,054.92, can expect to receive an 8% distribution. If the student loan debts were not paid in a special class, each of the Debtor's unsecured creditors could expect to receive a 39.5% distribution on their claims.[2]

No unsecured creditor timely objected to the Debtor's proposed Chapter 13 plan, and the Debtor's Chapter 13 trustee has recommended to the court that the plan be confirmed. For the benefit of the bar of this court, and in compliance with the court's duty to insure that a plan complies

---

[1] In the Debtor's proposed plan, the Debtor sought to pay student loan debts at 100%; however, it appears that the Debtor's proposed plan does not properly cash flow at 100%; thus, the proposed order of confirmation pays the student loan creditor 72%.

[2] In other words, by treating student loan debts in a separate class, general unsecured creditors are to receive $2,004.39. If the separate classification for student loan debts is disallowed, then the general unsecured creditors (excluding student loan debt) would receive $9,933.85.

1

with the provisions of Chapter 13,[3] the court has taken this opportunity to explain whether separately classifying student loan debt, and treating that class more favorably, is permissible pursuant to 11 U.S.C. § 1322(b)(1), given the unique nature of the federal student loan program.

**A.      Policy Behind Excepting Student Loan Debt from Discharge in Bankruptcy**

For most debtors, student loan debts are excepted from any bankruptcy discharge they may obtain. 11 U.S.C. § 523(a)(8). The only time that student loan debt may be discharged is when repayment "would impose an undue hardship on the debtor and the debtor's dependents." § 523(a)(8). Congress did not further define the term "undue hardship" in the Bankruptcy Code. As identified by the Court of Appeals for the Fourth Circuit in *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005), however, "undue hardship" must be "more than the usual hardship that accompanies bankruptcy." Thus, "[i]nability to pay one's debts by itself cannot be sufficient; otherwise all bankruptcy litigants would have undue hardship." *Id*. Moreover, in excepting student loans from discharge, Congress made a policy choice to protect the viability of the student-loan program:

> That program serves valuable purposes. It affords individuals in all walks of life the opportunity to obtain an education, and with it the mobility and financial stability that an education can provide. Indeed, without the program, many people would never receive any higher education, because their credit risks would preclude them from obtaining private commercial loans. The program does not just give loan recipients . . . the major benefits of a taxpayer-funded education. As history has shown, a well-educated society is critical to our general welfare and prosperity.
>
> It is thus understandable why Congress would "exact[] a quid pro quo" for government-guaranteed loans by using the undue hardship standard. Debtors receive valuable benefits from congressionally authorized loans, but Congress in turn requires loan recipients to repay them in all but the most dire circumstances. This heightened standard protects the integrity of the student-loan program and saves it "from fiscal doom." It also ensures public support for the program by preventing debtors from easily discharging their debts at the expense of the taxpayers who made possible their educations.

---

[3] *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1381 (2010) ("§ 1325(a) instructs a bankruptcy court to confirm a plan only if the court finds, inter alia, that the plan complies with the "applicable provisions" of the Code. Thus, contrary to the Court of Appeals' assertion, the Code makes plain that bankruptcy courts have the authority – indeed, the obligation – to direct a debtor to conform his plan to the requirements of [Chapter 13].").

2

*Frushour*, 433 F.3d at 399-400 (citations omitted).

Accordingly, as articulated by the Court of Appeals for the Fourth Circuit, student loan debts deserve special treatment in bankruptcy because the ability to fund an education is critical to the general welfare and prosperity of the United States, and the continuation of the tax-payer funded student loan program is essential to affording all individuals an opportunity to obtain an education to provide for a better future.

**B.      Separate Classification & Discriminatory Treatment – § 1322(b)(1)**

Importantly, unlike Chapter 7, where a debtor can quickly discharge pre-petition debts (and in theory have more funds available after filing bankruptcy to repay student loans), Chapter 13 requires that a debtor propose a repayment plan, generally lasting three to five years, where the debtor repays pre-petition creditors while reserving enough money to meet reasonably necessary living expenses. After laboring under the yoke of Chapter 13 for a period of years, the debtor can obtain a financial fresh start free of dischargeable, pre-existing debt. To obtain that discharge, however, Chapter 13 debtors must first propose a debt adjustment plan that complies with 11 U.S.C. § 1322.

Under § 1322(b)(1), a "plan may – (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated . . . ." This subsection has two parts: one dealing with the separate classification of claims, and the other dealing with whether unfair discrimination exists between designated classes.

**1.      Separate Classification of Student Loan Debts**

Regarding the classification of claims, a debtor is free to "divide unsecured claims not entitled to priority . . . into classes in the manner authorized for chapter 11 claims." S. Rep. No. 989, 95th Cong., 2d Sess. 141 (1978).

In the Chapter 11 context, classification of claims or interests is governed by § 1122 of the Bankruptcy Code, which states, "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). The term "substantially similar" is not defined in the Bankruptcy Code, but as the legislative history to § 1122 illustrates, the term "substantially similar" requires "classification based

3

on the nature of the claims or interests classified . . . ." H.R. Rep. No. 595, 95th Cong. 1st Sess. 406 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 118 (1978). Although 11 U.S.C. §1122(a) requires that all claims in a class be substantially similar, it does not "require that all substantially similar claims be placed within the same class, and it grants some flexibility in classification of unsecured claims." *Travelers Ins. Co. v. Bryson Props., XVIII (In re Bryson Props., XVIII)*, 961 F.2d 496, 502 (4th Cir. 1992). Thus, in a Chapter 11 context, a debtor is free to separately classify similar claims so long as the reasons for doing so are "independent of the debtor's motivation to secure the vote of an impaired assenting class of claims. *Id.* Of course, unlike Chapter 11, creditors in a Chapter 13 case are not allowed to vote on a proposed plan; consequently, there is no reason to gerrymander classes of claims to manipulate voting. *Cf.*, 11 U.S.C. § 1129(a)(7) *with* § 1325(a).

Here, both the Debtor's student loan debts and other general unsecured claims – such as credit card debts – are substantially similar in that both types of claims are unsecured. The nature of the Debtor's student loan debts, however, is different in that the student loan debts are generally excepted from any future discharge. Based on the different nature of presumptively non-dischargeable student loan debts, and general unsecured claims subject to being discharged, the court cannot discern any prohibition on separately classifying student loan debts from other unsecured obligations. *E.g.*, *McCullough v. Brown (In re Brown)*, 162 B.R. 506, 508 (N.D. Ill. 1993) (explaining that in the student loan context, the right to separately classify the student loan is not an issue – the only issue is one of unfair discrimination, which is different from classification); *In re Potgieter*, 436 B.R. 739, 743 (Bankr. M.D. Fla. 2010) ("[T]he separate classification of the debtor's student loan obligations does not violate Section 1122."); *In re Coonce*, 213 B.R. 344, 345 (Bankr. S.D. Ill. 1997) ("Because this provision does not mandate that all similarly situated claims be classed together, the majority of courts have interpreted § 1122 to allow separate classification of claims. This Court agrees and finds that the debtors' separate classification of student loan debts in this case is permissible.").

    2.    **Unfair Discrimination**

Although a debtor has the ability to separately classify student loan debts, 11 U.S.C. § 1322(b)(1) prohibits unfair discrimination between designated classes. Importantly, not all discrimination among classes of claims is prohibited – it is only unfair discrimination that is

4

impermissible. *In re Leser*, 939 F.2d 669, 672 (8th Cir. 1991). As in this case, the purpose of separately classifying student loan debts is to pay the student loan creditor more than what is being paid to other unsecured creditors. By its very nature, this treatment is discriminatory; however, just because treatment is discriminatory does not mean that it is unfairly discriminatory.

Courts holding that student loan debt may be paid a greater amount than other unsecured debt without being unfairly discriminatory generally reason that: (1) a debtor will not be afforded a fresh start in bankruptcy if the debtor is defaulting on student loan payments over the term of a 3-5 year plan, considering that on-going monthly plan payments are likely to be less than the amount owed on the student loan debt, interest is accruing, and the debts survive the debtor's discharge; (2) a strong public policy supports the repayment of educational loans; (3) Congress prefers Chapter 13 over Chapter 7, and debtors in Chapter 7 fare better with making post-bankruptcy payments on student loan debts because a Chapter 7 debtor will not have been in forced default of student loan obligations for 3-5 years; and (4) other unsecured creditors in Chapter 13 are not harmed by the preferential treatment for student loan debt because unsecured creditors must receive a return in Chapter 13 that is equivalent to what they would receive in Chapter 7 pursuant to 11 U.S.C. § 1325(a)(4). *See generally*, Seth J. Gerson, Note: *Separate Classification of Student Loans in Chapter 13*, 73 Wash U.L.Q. 269, 290-92 (1995).

Courts holding that favorable treatment of separately classified student loan debts constitute unfair discrimination generally reason that: (1) if Congress wanted to allow discriminatory treatment for student loan debts, it would have expressly allowed it as it did for co-debtor claims;[4] (2) Congress did not give any priority distribution treatment to student loan creditors, thus, neither should a bankruptcy court; (3) because student loan debts are excepted from discharge, Congress already made the policy decision to subordinate a debtor's right to a fresh start to the repayment of student loans; (4) it is unfair to favor student loan creditors over other creditors both after discharge and during the bankruptcy case; and (5) other debts excepted from discharge, like those for fraud, willful and malicious injury and drunk driving, are generally denied special treatment in a Chapter 13 case. *See generally*, Stephen L. Sepinuck, *Rethinking Unfair Discrimination in Chapter 13*, 74 Am. Bankr.

---

[4] 11 U.S.C. § 1322(b)(1) (expressly allowing co-debtor claims to be treated differently than other unsecured claims in a Chapter 13 plan).

L.J., 341, 384-87 (2000).

Numerous judge-made tests exist that purportedly help a court determine if a proposed treatment of a class of creditors in Chapter 13 constitutes unfair discrimination. Each test has been criticized either as being too strict, as is the case where no discriminatory treatment is allowed unless specifically provided by statute; too loose, as where the only consideration is whether creditors discriminated against receive as much as they would in Chapter 7; or too vague, as where the articulated multifactor tests for determining unfair discrimination are circular, overlapping and ultimately measured against terms like "case-by-case basis" or "reasonableness,"[5] which is nothing more than a signal to parties not to rely too heavily on precedent or to expect consistency in results. *Id.* at 351-360.

This court agrees that some discrimination between creditor classes is allowed even though the discrimination is not expressly authorized by statute. *E.g.*, *Leser*, 939 F.2d at 671-72 ("'[B]y allowing for separate classes of unsecured claims, Congress anticipated some discrimination, otherwise separate classes would have no significance.'") (citation omitted); *In re Cook*, 26 B.R. 187, 190 (D.N.M. 1982) (rejecting the view that the only discriminatory classification allowed by § 1322(b)(1) are those expressly authorized by statute). Likewise, the court believes that a test for unfair discrimination is something different than the best interests of creditors test embodied in 11 U.S.C. § 1325(a)(4). *E.g.*, *In re Kolbe*, 199 B.R. 569, 574 (Bankr. D. Md. 1996) ("'[I]t is a total non

---

[5] The articulated factors are generally:

1. Whether there is a rational basis for the classification;
2. Whether the classification is necessary to the debtor's rehabilitation under chapter 13;
3. Whether the discriminatory classification is proposed in good faith;
4. Whether there is a meaningful payment to the class discriminated against; . . . .
5. The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

*In re Husted*, 142 B.R. 72, 74 (Bankr. W.D.N.Y. 1992).

sequitur to move from the premise that all unsecured creditors may recover nothing in Chapter 7 liquidation . . . to the conclusion that they may "therefore" sustain sharply different treatment—some of them receiving a greater percentage and some receiving a lesser percentage of their debts—if the debtor chooses to follow a different path under the Code.'") (citation omitted). Also, because "unfairness" is ultimately a discretionary determination, subject to individual judgment that is informed by the nature and purpose of the Bankruptcy Code, articulated multifactor tests applicable to all cases are not helpful and are incongruous with the nature of the required judicial process. *E.g.*, *In re Taylor*, 137 B.R. 60, 65 (Bankr. W.D. Okla. 1992) (reasoning that a multifactor test "lends itself to varying results on virtually identical fact situations, to unpredictability, and ultimately to unnecessary litigation of cases possessing little if any real distinctive features.").

Certainly, in evaluating whether creditor classes are being unfairly discriminated against, a court must be mindful of the twin aims of the Bankruptcy Code: that of providing the debtor with a fresh start and to provide a mechanism for the collection of debts. *E.g.*, Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law*, p.3 (Harvard University Press, 1986), reprinted by Beard Books (2001) (recognizing the dual purpose of bankruptcy law). Regarding the latter aim, the general maxim is equality of distribution among creditors, unless otherwise expressly allowed by the Bankruptcy Code. *See, e.g.*, *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) ("'To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer.'") (citation omitted). Of course, § 1322(b)(1) expressly allows a debtor to treat otherwise equal claims differently; thus, ensuring equality of distribution among creditors is not an primary concern in determining whether unfair discrimination exists.

In this court's view, in determining whether favorable treatment of a student loan creditor is unfair discrimination, the court should be mindful of a number of circumstances that are peculiar to the individual case and the exact nature of the discrimination.

As stated, one of the primary aims of the Bankruptcy Code is to afford a debtor with a fresh start. Treating student loans favorably in a Chapter 13 plan manifests this aim to the extent that it ensures the debtor is no worse off for having filed bankruptcy. Second, Congress has expressly chosen to favor student loan debts over other unsecured debts by excepting student loans from

7

discharge in all but the most dire of circumstances. *E.g.*, *Frushour*, *supra*. Third, the purpose of this exception to discharge is not to punish the debtor for bad conduct (as in the case of fraud or willful and malicious injury), but to protect the rights of the creditor to repayment. *Cf.*, § 523(a)(6) (excepting debts incurred by the debtor for the debtor's willful and malicious conduct) *with* § 523(a)(8) (excepting all federal student loan debts from discharge regardless of how the debt was incurred). Fourth, a strong public policy exists that favors the federal student loan program, the solvency of which is critical to our nation's welfare and prosperity. *Frushour*, 433 F.3d at 399-400. Fifth, in contrast to allowing favorable treatment for student loan debts, nothing in the Bankruptcy Code, Rules, or policies underlying the nature of otherwise dischargeable, general unsecured debt would cause this court to allow similar discriminatory treatment in favor of the unsecured creditors that are being discriminated against in this case.[6]

Finding that a basis exists to treat student loan debts more favorably than other unsecured creditors, however, does not necessarily afford a license to a debtor to pay student loan creditors all their Chapter 13 actual, disposable income while not making any payments to other unsecured creditors – even assuming that the best interest of creditor test of § 1325(a)(4) would otherwise be met by a 0% payout. A debtor must be able to articulate a reason why the discriminatory treatment is being proposed, and be able to demonstrate that a lesser discriminatory means of treatment is not advisable.

For example, in this case, the proposed order confirming the Debtor's plan makes a 72% distribution on student loan debts, while making an 8% distribution to other unsecured creditors.[7]

---

[6] As with any discretionary determination of "unfairness," countervailing arguments exist, such as those articulated *supra* by courts holding that unfair discrimination exists when student loan debts are treated favorably. This court is not convinced that those arguments – which place too much importance on the absence of express statutory authorization to allow student loan discrimination and unjustifiably conflates student loan debts with those based on a debtor's wrongdoing – should override the reasons articulated by this court for allowing the discriminatory treatment.

[7] Because the proposed order of confirmation in this case does not propose to pay the student loan creditors 100%, the court need not address, at this time, the prohibition in 11 U.S.C. § 1322(b)(10) that a debtor not provide for the payment of accruing interest on unsecured, nondischargeable claims unless full payment is also made to all allowed claims.

In the absence of an articulated reason as to why this discriminatory treatment is being proposed, the court cannot discern whether the proposed treatment is prohibited. In other words, the Debtor has not shown why a 62% or 52% payment to the student loan creditors would not be appropriate in this case. If the 72% repayment proposed by the Debtor is an arbitrary number, then the court is likely to find that the Debtor is unfairly discriminating against other unsecured creditors.

**C.     Conclusion**

For the above stated reasons, the court will enter a separate order that sets the Debtor's Chapter 13 plan for a confirmation hearing, at which time the Debtor will be afforded an opportunity to explain to the court the basis for making a 72% distribution to the Debtor's student loan creditor.[8]

---

[8] For example, if the 72% distribution will prevent the unwarranted accrual of interest and/or penalties during the term of the Chapter 13 plan, the court is likely to find the discrimination acceptable. Because the Debtor has not proposed to treat the student loan obligations as long term debts under 11 U.S.C. § 1322(b)(5), the court expresses no opinion in this case on the use of that subsection for the repayment of student loans.

9